# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Virginia Del Monte Asuncion<br>c/o Perkins Coie LLP<br>700 13th Street, Suite 600<br>Washington, DC 20005,<br><br>Plaintiff,<br><br>v.<br><br>Sameera Al-Tuwaijri<br>5501 Seminary Road, No. 505<br>Falls Church, VA 22041<br><br>Defendant. | **COMPLAINT**<br><br>Civil Action No.  1:18-cv-01228 |

Plaintiff Virginia Del Monte Asuncion, by and through undersigned counsel, makes the following Complaint against Sameera Al-Tuwaijri:

## PRELIMINARY STATEMENT

1. Plaintiff Virginia Del Monte Asuncion (hereinafter "Ms. Asuncion" or "Plaintiff") was brought to the United States by Defendant Sameera Al-Tuwaijri under false pretenses to work as a domestic servant. Al-Tuwaijri willfully failed to compensate Plaintiff for her labor in violation of federal and state law.

2. Al-Tuwaijri convinced Ms. Asuncion to accompany her to the United States under false pretenses, providing her a written contract that promised fair wages and good working conditions.

3. Rather than abide by their contract, Al-Tuwaijri required Ms. Asuncion to work long hours without pay while subjecting her to psychological abuse and exploiting her fears of deportation.

135829284.5

4. Ms. Asuncion seeks damages and restitution for unpaid wages and breach of the parties' contract, damages arising from state contract and tort causes of action, plus fees and costs.

**PARTIES**

5. Plaintiff Virginia Del Monte Asuncion is a sixty-one-year-old citizen of the Philippines who resides in the Commonwealth of Virginia. At the time of the events that give rise to this Complaint, Ms. Asuncion was legally residing in the United States under a duly issued B-1 Employment Visa. Ms. Asuncion worked as a domestic housekeeper for Al-Tuwaijri in the United States from December 16, 2014, through November 18, 2016.

6. At all times relevant hereto, Al-Tuwaijri was employed by the World Bank in Washington, D.C. as a senior advisor to a public health program. Upon information and belief, Al-Tuwaijri currently resides at 5501 Seminary Road, No. 505, Falls Church, Virginia 22041.

**JURISDICTION AND VENUE**

7. Plaintiff's claims arise from Al-Tuwaijri's failure to pay minimum wages to Plaintiff as required by the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et. seq.* ("FLSA"). Plaintiff's claims also arise from Al-Tuwaijri's fraudulent inducement into and subsequent breach of the parties' employment contract, and Al-Tuwaijri's infliction of emotion distress upon Plaintiff.

8. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9. The Court has subject matter jurisdiction over Plaintiff's state law contract and tort claims because they are so closely related to the federal law claims as to form part of the same case or controversy. *See* 28 U.S.C. § 1367(a).

135829284.5

10. Because Al-Tuwaijri caused tortious injury by an act or omission in Virginia and resides in Virginia, the Court has personal jurisdiction over Al-Tuwaijri.

11. Venue is proper in the Alexandria Division of the Eastern District of Virginia because the events or omissions giving rise to Plaintiff's claims occurred in Arlington, Virginia and because Al-Tuwaijri resides in Falls Church, Virginia. *See* 28 U.S.C. § 1391(b).

## BACKGROUND

12. Plaintiff initially met Al-Tuwaijri in 1987 when Plaintiff was employed as a domestic worker by Al-Tuwaijri's family in Saudi Arabia for two years.

13. In 2013, Al-Tuwaijri and Plaintiff connected on Facebook. At this time, Al-Tuwaijri asked Plaintiff to work for her in Jordan. Al-Tuwaijri sent Plaintiff a visa and ticket to travel there.

14. Plaintiff arrived in Jordan on February 20, 2013. Al-Tuwaijri had obtained a tourist visa for Plaintiff, which she later extended. In Jordan, Al-Tuwaijri and Plaintiff had no employment contract. Al-Tuwaijri paid Plaintiff $400 per month and gave Plaintiff no days off. Plaintiff worked in Jordan until January 12, 2014.

15. From Jordan, Al-Tuwaijri and Plaintiff traveled to Cairo, Egypt where Plaintiff continued to work for Al-Tuwaijri. In Cairo, Al-Tuwaijri and Plaintiff established a contract. Under this contract, Plaintiff was to be paid $400 per month with a 10% salary increase each year. Additionally, Plaintiff was to have one day off per week. Al-Tuwaijri and Plaintiff did not stay in Cairo longer than a year, and Plaintiff did not receive a salary increase. Additionally, Plaintiff did not receive a full day off each week — although Al-Tuwaijri let Plaintiff attend church on Sundays, she required Plaintiff to work the rest of the day.

16. In both Jordan and Cairo, Plaintiff needed her salary to support her family.

While in Jordan and Cairo, Plaintiff sent almost all the money she was paid by Al-Tuwaijri to her family in the Philippines via Western Union. As a result, Plaintiff had hardly any money of her own for food and clothing. Consequently, rather than purchase her own, Plaintiff ate the Al-Tuwaijri family's leftovers after they finished meals and wore (and continues to wear) Al-Tuwaijri's used clothes, some of which were more than 20 years old. Al-Tuwaijri was aware of these facts.

17. In 2014, Al-Tuwaijri asked Plaintiff to accompany her to the United States, explaining that she would obtain a tourist visa for Plaintiff then process her paperwork once in the country. Despite their history, Plaintiff was induced by Al-Tuwaijri to come to the United States; Plaintiff and her family faced a difficult economic situation in the Philippines. Thereafter, Plaintiff had an interview at the U.S. Embassy in Cairo, but the U.S. Embassy refused to issue a visa to Plaintiff without a contract for work in the United States. Hence, the parties executed an employment contract, attached hereto as **Exhibit A**. Their contract promised that Plaintiff would receive days off each week and would be paid not less than $1,500 per month. Subsequently, Plaintiff obtained a duly issued visa to accompany Al-Tuwaijri to the United States.

18. Plaintiff flew with Al-Tuwaijri from Egypt to the United States and arrived on December 16, 2014, at Dulles International Airport. Plaintiff and Al-Tuwaijri waited for an Uber from the airport and were driven directly to Al-Tuwaijri's apartment in Crystal City, Arlington, Virginia. Plaintiff lived with Al-Tuwaijri in this apartment until July 2015. Then, both moved to a townhouse on South Glebe Road in Arlington, Virginia. There, Plaintiff slept in the kitchen and stored her clothing and other belongings in a kitchen pantry. When she attempted to hang a privacy curtain, Al-Tuwaijri refused. Thus, Plaintiff had no privacy or space

of her own. Additionally, when Plaintiff arrived in Virginia, her ability to speak and understand English was limited.

19. During her employment for Al-Tuwaijri in the United States, Plaintiff was not paid per the contract's terms. The first month of her employment, Al-Tuwaijri offered Plaintiff only $400, then insisted on holding Plaintiff's wages because Plaintiff had no bank account in which to deposit them. Although Plaintiff wanted to open a bank account, Al-Tuwaijri told Plaintiff that she could not because Plaintiff did not have any valid identification. After their first month in the United States, Al-Tuwaijri continued to refuse to pay Plaintiff her full salary because she had bought Plaintiff's plane ticket, paid for Plaintiff's food and expenses, and would pay for Plaintiff to attend English classes. Plaintiff did not complain because she was afraid of Al-Tuwaijri and feared that she would send Plaintiff back to the Philippines where she would be unable to earn money for her family.

20. In January 2015, Al-Tuwaijri told Plaintiff that she was arranging for Plaintiff to obtain an F1 Student Visa to extend Plaintiff's legal status. To obtain that visa, Al-Tuwaijri required Plaintiff to attend English classes to qualify as a student. Although Plaintiff did not want to attend English classes and apply for an F1 Visa, Al-Tuwaijri demanded that she do so. Plaintiff's classes started on February 2, 2015.

21. The parties' contract provided that Plaintiff would work from 9am until 5pm Monday through Friday. However, while Plaintiff worked for Al-Tuwaijri in the United States, Plaintiff's day began at 6am when she awoke to prepare breakfast for Al-Tuwaijri's daughter. At 8:30am, Plaintiff left for her English classes, which lasted until 2pm. Because Plaintiff's domestic duties began at 3pm and Al-Tuwaijri yelled at Plaintiff if she arrived home after 3pm, she was often forced to leave her English class early to arrive home on time. On days when Al-

Tuwaijri's daughter did not have school, Plaintiff was required to skip her English class to take care of the daughter. Every day, Plaintiff had to serve Al-Tuwaijri until she and her daughter went to bed, meaning Plaintiff's workday typically did not end until after 10pm (although Plaintiff was sometimes required to work as late as 12am or 1am). Then, if the Al-Tuwaijris woke up during the night, Plaintiff would have to wake up to serve them. For example, Plaintiff was often called to their room late at night to kill insects.

22. In the United States, Plaintiff could not send the little money she earned to her family in the Philippines on her own. Instead, Plaintiff had to beg Al-Tuwaijri to send her salary from Al-Tuwaijri to her family. Although Al-Tuwaijri never paid Plaintiff directly, eventually, in April 2015, she sent Plaintiff's family $100 and then $500. Al-Tuwaijri sent additional amounts later that year: in May ($500), August ($250), and November ($300).

23. While working for Al-Tuwaijri, Plaintiff never received a paycheck. Instead, after Plaintiff begged Al-Tuwaijri to loan her small amounts of money for food and clothes, Al-Tuwaijri occasionally lent Plaintiff money (normally $100) that had to be repaid. Plaintiff kept a log of all the remittances Al-Tuwaijri sent to Plaintiff's family and the few times that Al-Tuwaijri loaned Plaintiff money.

24. When Plaintiff complained to Al-Tuwaijri about Al-Tuwaijri's failure to pay Plaintiff in accordance with their contract, Al-Tuwaijri became very angry. Al-Tuwaijri justified her breach of contract to Plaintiff by citing the expense of Plaintiff's plane ticket to the United States (which was a cost Al-Tuwaijri was obligated to pay by their contract) and English classes (which Al-Tuwaijri forced her to take). In the United States, Plaintiff's situation was worse than it had been in Jordan and Cairo because Plaintiff now had no money of her own.

25. Al-Tuwaijri often promised Plaintiff that her situation would improve. For

example, Al-Tuwaijri promised Plaintiff a work permit and Green Card. She also told Plaintiff that Plaintiff would begin working for another diplomat in the mornings, and this diplomat would sponsor Plaintiff for a work visa. These promises never materialized. Al-Tuwaijri later promised to find someone to hire Plaintiff as a chef after getting a business permit. These plans also never actualized. When Plaintiff asked her about these promises and a work visa, Al-Tuwaijri always became very angry and shouted at Plaintiff. Consequently, Plaintiff was scared to challenge Al-Tuwaijri or say any more.

26. From Jordan to Egypt to the United States, Al-Tuwaijri consistently treated Plaintiff poorly and made unreasonable demands. Plaintiff was always on call, and she was responsible for serving and cooking meals, laundering clothes, ironing, scrubbing toilets, cleaning, dusting, babysitting Al-Tuwaijri's 16-year-old daughter and Al-Tuwaijri's friends' children, washing Al-Tuwaijri's cars, caring for Al-Tuwaijri's guests, and taking on other tasks as they were assigned. Plaintiff's only respite was the few hours she spent at church each Sunday morning, but Al-Tuwaijri often called Plaintiff even during these hours. Plaintiff had to cater to all of Al-Tuwaijri's family's needs at all times.

27. In 2015, while Plaintiff lived with Al-Tuwaijri in the South Glebe townhouse, Al-Tuwaijri's sister and her four sons visited Al-Tuwaijri's Crystal City apartment for one month. Throughout their stay, Plaintiff was responsible for not only her regular duties, but also for all the domestic work in the Crystal City apartment. Three times each week for Al-Tuwaijri's sister's month-long visit, Plaintiff cleaned, did laundry, ironed, and completed other tasks for the sister. Since Plaintiff had no transportation between the South Glebe townhouse and Crystal City apartment, and neither Al-Tuwaijri nor her sister provided Plaintiff a ride, Plaintiff had to walk one hour each way. As a "gift," Al-Tuwaijri's sister gave Plaintiff $200 for

the month of work.  Plaintiff accepted but feared how Al-Tuwaijri might react.

28.     This pattern of caring for guests continued at the South Glebe townhouse. Within a year, Al-Tuwaijri hosted visitors from the Netherlands and from Tunisia (for three weeks), and coworkers at the World Bank (who stayed twice, first for three weeks and again for 15 days).  The townhouse had three bedrooms, one of which was Plaintiff's.  When guests visited, Plaintiff had to pack all her things — clothes, sheets, etc. — in trash bags and put them in the basement or behind the couch.  Plaintiff would sleep on the couch, and the guests would take her room and bed.

29.     During Plaintiff's time with Al-Tuwaijri, Al-Tuwaijri invaded Plaintiff's privacy.  Al-Tuwaijri lent Plaintiff an iPhone and iPad so she could contact her.  Al-Tuwaijri, however, monitored the devices she lent Plaintiff to see what text messages Plaintiff was receiving.  Al-Tuwaijri asked Plaintiff prying questions, like whether Plaintiff was in a relationship and why someone was texting Plaintiff.  Plaintiff was scared to communicate freely or share anything private via phone or messages because of Al-Tuwaijri's spying behavior.

30.     On Friday, November 18, 2016, Al-Tuwaijri told Plaintiff that Plaintiff had to stay home for the remainder of the weekend to make pastries for an event.  Plaintiff told Al-Tuwaijri there was an event on Saturday at church that she would like to attend — a medical mission where she could have her eyes checked.  Al-Tuwaijri forbid Plaintiff from attending the church event, then left town for the weekend.  On Saturday, November 19, 2016, Al-Tuwaijri returned home early and told Plaintiff to stop cooking, threatening to send her back to the Philippines.  Plaintiff was terrified; she believed Al-Tuwaijri's threat, knew Al-Tuwaijri had power over her and her ability to remain in the United States, and was aware that Al-Tuwaijri controlled the little money Plaintiff could send back to her family.  Plaintiff did not believe she

could argue or challenge Al-Tuwaijri because Al-Tuwaijri controlled her livelihood and status in the United States.

31. After church that Sunday, November 20, 2016, Al-Tuwaijri fired Plaintiff. She kicked Plaintiff out of the South Glebe townhouse the next day, Monday, November 21, 2016. Before Plaintiff left the house, Al-Tuwaijri gave Plaintiff $400.

32. During the time relevant to this action, Al-Tuwaijri was the employer of Plaintiff and Plaintiff was the employee of Al-Tuwaijri, as defined by the Fair Labor Standards Act, in that Al-Tuwaijri supervised Plaintiff's work, held or implemented the power to hire and fire her, set her terms and conditions of employment, was subjectively contemplated by all parties to be Plaintiff's employer, and received the benefit of Plaintiff's labor.

33. At all times relevant to this action, Al-Tuwaijri failed to pay Plaintiff the minimum wage for each hour that she worked and failed to pay the wage agreed to by contract for each hour that she worked.

34. Al-Tuwaijri's failure and refusal to pay Plaintiff's earned wages was willful and not the result of a bona fide dispute. At no time did Al-Tuwaijri notify Plaintiff of her rights under the Fair Labor Standards Act.

35. Plaintiff suffered economic injury as a result of not being paid in accordance with her contract with Al-Tuwaijri. As a direct and proximate result of Al-Tuwaijri's actions, Plaintiff has sustained damages, including economic loss and emotional distress.

## FIRST CLAIM FOR RELIEF

### Federal Minimum Wage

35. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

36. Al-Tuwaijri employed Plaintiff within the meaning of the Fair Labor Standards Act, 29 U.S.C. §§ 203(d)-(g).

37. Al-Tuwaijri willfully failed to pay Plaintiff minimum wages, in violation of 29 U.S.C. § 206(a) and the United States Department of Labor regulations.

38. At all times relevant hereto, the relationship between Al-Tuwaijri and Plaintiff was one of private master and servant, and Plaintiff was not employed as if she were an employee of a governmental agency or authority.

39. Al-Tuwaijri's willful violation of the Fair Labor Standards Act entitles Plaintiff to recovery of her unpaid minimum wages and reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. §§ 201, *et seq.*, and the United States Department of Labor regulations, in addition to declaratory relief.

## SECOND CLAIM FOR RELIEF

### Fraudulent Inducement

40. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

41. Al-Tuwaijri intentionally and knowingly made material misrepresentations to Plaintiff regarding the conditions of Plaintiff's employment in the United States in order to induce her to come to the United States, under the pretense that, *inter alia,* Plaintiff would be paid regularly and would be working only 40 hours per week.

42. Al-Tuwaijri made the above material misrepresentations for the purpose of procuring a contract and with the intention that Plaintiff would rely on such in order to entice Plaintiff to come to the United States and to force her to work as an unpaid domestic servant in her household.

43. Al-Tuwaijri induced Plaintiff to come to the United States knowing of Plaintiff's difficult economic circumstances in the Philippines, and intending for her to rely upon Al-Tuwaijri's representations that employment in the United States would improve Plaintiff's ability to support herself and her family.

44. Plaintiff did in fact rely on Al-Tuwaijri's misrepresentations and was induced by the misrepresentation to enter into a contract. As a result, Plaintiff was forced to work as a domestic worker for Al-Tuwaijri without pay, thereby suffering great financial harm.

45. Al-Tuwaijri never intended to follow through, and did not follow through, on her promises, notwithstanding any of the aforementioned representations made to Plaintiff. Al-Tuwaijri did not intend to pay Plaintiff $1500 per month, did not plan to give her any days off, and did not intend to limit the hours of her workweek to forty hours per week. Instead, Al-Tuwaijri planned to coerce — and did coerce — Plaintiff to work at least sixteen hours a day, seven days a week.

46. At the time that Al-Tuwaijri made the foregoing representations and promises to Plaintiff, in the form of the written contract that she offered to her, she had no intention of carrying out such representations and promises.

47. Al-Tuwaijri made the foregoing misrepresentations with a conscious and deliberate disregard of the interests of others such that her conduct may be called willful or wanton, and such conduct has the character of outrage frequently associated with criminal conduct.

48. At all times relevant hereto, the relationship between Al-Tuwaijri and Plaintiff was one of private master and servant. Plaintiff was not employed as if she were an employee of a governmental agency or authority.

49. As a direct and proximate result of these actions, Plaintiff has sustained damages.

50. Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

### THIRD CLAIM FOR RELIEF

### Unjust Enrichment

51. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

52. Plaintiff conferred a benefit on Al-Tuwaijri by providing services as a live-in domestic servant to Al-Tuwaijri in good faith and with the expectation that she would be fairly compensated for such services.

53. Al-Tuwaijri knew of these services and reasonably expected to repay Plaintiff.

54. Al-Tuwaijri accepted these services and in turn failed to compensate Plaintiff for the fair market value of her services.

55. Al-Tuwaijri has been unjustly enriched at Plaintiff's expense.

56. At all times relevant hereto, the relationship between Al-Tuwaijri and Plaintiff was one of private master and servant, and Plaintiff was not employed as if she was an employee of a governmental agency or authority.

57. Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

### FOURTH CLAIM FOR RELIEF

### Breach of Contract

58. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

59. Plaintiff and Al-Tuwaijri entered into a legally binding employment agreement, whereby Plaintiff agreed to be Al-Tuwaijri's housekeeper, and Al-Tuwaijri agreed to pay Plaintiff $10 per hour for a 40-hour workweek, and an overtime wage rate of $15 per hour for every hour over 40 that Plaintiff worked per week. Al-Tuwaijri also contracted to provide Plaintiff with 24 holidays, 21 days of vacation, and 7 sick days each year. The contract also guaranteed payment of employer-side Social Security taxes on Plaintiff's behalf. In addition, the contract provided that Al-Tuwaijri would pay for Plaintiff's airfare from the United States.

60. Plaintiff fully performed under her contract with Al-Tuwaijri by working as a housekeeper for Al-Tuwaijri. Plaintiff performed beyond the contract terms by working far in excess of the hours stated and undertaking additional duties beyond those stated in the contract.

61. Al-Tuwaijri intentionally and willfully breached the contract by failing and refusing to pay Plaintiff the wages promised in her contract. Plaintiff never had a day off, Al-Tuwaijri never paid Social Security or any other employment taxes, and Al-Tuwaijri did not pay for Plaintiff's airfare out of the United States.

62. Al-Tuwaijri refused to pay Plaintiff the wages promised in her contract with a conscious and deliberate disregard of the interests of others such that her conduct may be called willful or wanton, and that such conduct has the character of outrage frequently associated with criminal conduct.

63. Plaintiff suffered and continues to suffer economic damages due to Al-Tuwaijri's breach. Such damages were foreseeable as a result of a breach at the time the parties entered into the contract.

64. Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

65. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

66. Al-Tuwaijri intentionally engaged in outrageous conduct toward Plaintiff, causing her to suffer severe emotional distress.

67. Al-Tuwaijri acted in a cold and calculated manner to maximize her utility of Plaintiff's services during the time that Plaintiff worked in Al-Tuwaijri's home.

68. Al-Tuwaijri's conduct was outrageous and intolerable as she coerced a vulnerable person to continue to work for her.  Al-Tuwaijri's conduct is also hypocritical in her employment at the World Bank promoting women's rights.

69. Plaintiff's emotional distress is directly attributable to the harsh and coercive means that Al-Tuwaijri undertook to keep Plaintiff under her thumb.

70. Plaintiff's resulting emotional distress was severe, resulting from conduct not condoned in the community and as a direct result from human trafficking.

71. Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that judgment be granted as follows:

(a) Money damages for each Claim for Relief;

(b) Punitive and exemplary damages according to proof;

(c) Attorneys' fees and costs for Plaintiff against Al-Tuwaijri; and

135829284.5

(d) Such other further relief as the Court may deem just and proper.

Plaintiff demands a trial by jury.

Dated: September 27, 2018      By: /s/ *Brenna Duncan*
Brenna Duncan (VSB # 89133)
BDuncan@perkinscoie.com
Dwayne D. Sam (*pro hac vice pending*)
DSam@perkinscoie.com
LeAnn Johnson Koch (*pro hac vice pending*)
LeAnnJohnson@perkinscoie.com
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.654.6282
Facsimile: 202.654.6532

*Counsel for Plaintiff*
*Virginia Del Monte Asuncion*